**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| SYMON MANYARA, | * |
| Plaintiff, | * |
| v. | *  Case No.: PWG-12-1838 |
| BOWIE STATE UNIVERSITY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Memorandum Opinion addresses Defendant Bowie State University's Motion to Dismiss, ECF No. 7, and accompanying Memorandum, ECF No. 7-1; Plaintiff Symon Manyara's Opposition, ECF No. 8; and Defendant's Reply, ECF No. 9. I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED.

I.  **BACKGROUND**

For purposes of considering Defendant's Motion, the Court accepts the well pleaded facts that Plaintiff alleged in his Complaint as true.[1] *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir.

---

[1] While generally the law is clear that a District Court may not consider extrinsic evidence outside of the pleadings when ruling on a defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), when "'a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir.

2011).  Plaintiff is a United States citizen and native of Kenya, who has been employed by Defendant since 1986.  Compl. 2, ECF No. 1.  When he originally was hired by Defendant in 1986, Defendant held the position of Adjunct Professor.  *Id.* at 4.  After serving as an Adjunct Professor for ten years, Plaintiff was "hired, full-time, as an Instructor in the" Department of Accounting, Finance, Economics ("AFE Department") on August 20, 1996.  Plaintiff alleges that he "held the position of Instructor for more than six consecutive years," was therefore entitled to formal review for tenure pursuant to Defendant's ART policy, yet was denied tenure review "in direct contravention" of that policy.  *Id.*  Specifically, Plaintiff alleges that the ART policy "provides that an Instructor without tenure whose employment has been extended to a sixth year of continuous, full time service commencing on or after July 1, 1990 shall receive during that sixth year a formal review for tenure as an Instructor."  *Id.*  After not receiving tenure review pursuant to the ART policy, Plaintiff was demoted from Instructor to Lecturer in 2002, which is a position that Plaintiff and Defendant agree is a "position that is not intended to be considered

---

2004) (internal quotation marks omitted)).  Here, Defendant has attached as Exhibit A to its Motion to Dismiss a copy of its policy on Appointment, Rank, and Tenure of Faculty ("the ART policy").  Defendant argues that because Plaintiff references this policy throughout his Complaint, it is integral to Plaintiff's claims and therefore, the Court may consider the document without converting it to a Motion for Summary Judgment.  Def.'s Mem. 2, n.1.  However, Defendant's argument misses the mark.  The law is clear that to be integral, the document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (emphasis in original)).  Here, while the contents of the ART policy are highly relevant (indeed, Plaintiff refers to it throughout the Complaint, yet did not attach a copy as an exhibit), the existence of the document itself does not give rise to Plaintiff's claims and therefore, is not integral to his Complaint.  For the purposes of considering Defendant's Motion to Dismiss, the Court will disregard Exhibit A to Defendant's Motion, as it is non-integral.  *See Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civil Action No.: JFM-10-CV-0206, 2010 WL 2732334, at *2–3 (D. Md. July 8, 2010) ("If a defendant attaches non-integral documents to a motion to dismiss, the simplest course for a court to take is to disregard them.").  References to the ART policy discussed in this Memorandum Opinion are to those raised by the parties in their pleadings and motions papers.

for professional appointment." *Id.*; *see* Def.'s Mot. 1 (stating that Plaintiff was "demoted in 2002 to a yearly contractual position which according to University policy did not involve a tenure or permanent status commitment"). Plaintiff asserts that Defendant never provided any explanation for his demotion, and instead "instructed him to sign one-year Letters of Appointment with the Lecturer designation if he wanted to remain employed." Compl. 5.

Plaintiff next alleges that in 2004, he "applied for an appointment as a tenure-track Assistant Professor," was interviewed and recommended as the leading candidate for the position by the AFE Department's faculty search committee, yet again was denied the promotion and the opportunity to participate in the tenure review process. *Id.* at 6. Plaintiff also alleges that his salary is "significantly less than the compensation paid to similarly-situated, American-born professors, many of whom lack [Plaintiff's] experience, seniority, and classroom abilities." *Id.*

In 2009, upon a recommendation from Anthony Nelson, Dean of the College of Business at Bowie State University, Plaintiff elected to apply for permanent status, a "classification that permits an employee's services to be terminated" only for cause. *Id.* However, Plaintiff alleges that after beginning the application process for permanent status, Defendant informed Plaintiff that "permanent status is granted only to employees designated as librarians." *Id.* at 7. Plaintiff disputed this contention by "provid[ing] to Dean Nelson the names and departments of four professors who worked for the University on a permanent status basis as Assistant Professors." *Id.* Plaintiff claims that Defendant's response to this information was "simply [to] refuse[] to respond to [Plaintiff] or consider him for promotion, while at the same time granting tenure, permanent status, and promotion to similarly situated American-born faculty." *Id.* at 8. Plaintiff alleges that he appealed Defendant's denials of tenure and promotion and on March 30, 2010, met with Provost Karen Johnson Shaheed to discuss his current employment status. *Id.*

3

After Plaintiff's meeting with Provost Shaheed, he began preparing another application for both tenure and promotion, called a dossier. *Id.* at 9. On August 6, 2010, Defendant, through counsel, notified Plaintiff "that he was not eligible for its tenure review process." *Id.* Plaintiff then alleges that in response to his repeated questions concerning Defendant's denial of his application for tenure and promotion, the AFE Department's search committee requested additional information regarding Plaintiff's application for tenure. *Id.* Shortly thereafter, Defendant again denied Plaintiff's application for tenure and promotion, stating that he was not eligible for either. *Id.* Defendant and its various employees reiterated this position on January 5, 2011; January 19, 2011; January 21, 2011; February 2, 2011; and February 16, 2011, in response to Plaintiff's repeated correspondence "pointing out the factual errors in [Defendant's] position." *Id.* at 10. On March 2, 2011, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR"). Def.'s Mem. 4.

On June 21, 2012, Plaintiff filed the present action against Defendant, alleging employment discrimination in violation of Title VII, retaliation in violation of Title VII, employment discrimination in violation of 42 U.S.C. § 1981, and retaliation in violation of 42 U.S.C. § 1981. *Id.* at 12–16. Plaintiff concludes that Defendant "has consistently created an environment of social and professional exclusion for [Plaintiff] and other foreign-born professors based on their national origin." *Id.* at 11. Additionally, Plaintiff alleges that Defendant "has taken affirmative steps to make" Plaintiff's "teaching experience . . . difficult, unfair, and uncomfortable" on the basis of his national origin. Indeed, Plaintiff alleges that Defendant's assertion that he is ineligible for tenure and promotion is "mere pretext for discrimination" because Defendant "has consistently promoted American-born faculty in the AFE Department

with far less time of service and experience than [Plaintiff]." *Id.* Plaintiff also alleges that as a result of filing charges with the EEOC, Defendant engaged in "retaliatory conduct." Compl. 11–12. Specifically, Plaintiff asserts that a University professor "expressed disappointment" that Plaintiff filed charges with the EEOC and threatened Plaintiff by telling him that he is a Lecturer and therefore, the Dean can let him go at any time. *Id.* at 12.

On September 23, 2012, Defendant filed a Motion to Dismiss Plaintiff's Complaint, arguing first that Plaintiff's suit is time-barred because he failed to file a charge of discrimination with the EEOC within 300 days of his 2002 demotion to Lecturer and second, that Defendant maintains its sovereign immunity from Plaintiff's 42 U.S.C. § 1981 claims "because those claims are viable only against private actors and the State's immunity has neither been abrogated, nor waived with respect to those claims." Def.'s Mot. 1–2.[2] Plaintiff counters that his Complaint is not time-barred because it "properly alleges a series of discriminatory acts that form the basis of a continuing violation" of Plaintiff's "right to employment free of discrimination." Pl.'s Opp'n 2–3. Plaintiff also argues, in the alternative, that even if the Court does not find that Defendant's failure to promote Plaintiff is a continuing violation of his rights, Plaintiff's claim is not time-barred because he filed a timely charge of discrimination with the EEOC and MCCR after Defendant failed to promote him in 2010. Pl.'s Opp'n 3. With regard to Count II, Plaintiff argues that his claim of retaliation is proper because arises out of the Charge filed with the EEOC. *Id.*

---

[2] Plaintiff does not contest Defendant's assertion of sovereign immunity with regard to Counts III and IV of Plaintiff's Complaint. Pl.'s Opp'n 2, n.1.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil No.: RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## III.    DISCUSSION

Preliminarily, Defendant argues that Plaintiff fails to present an actionable claim pursuant to 42 U.S.C. § 1981, as Defendant, Bowie State University, is "an arm of the State of Maryland" and therefore, immune from 42 U.S.C. § 1981 claims. Def.'s Mem. 9–10. Not surprisingly, Plaintiff does not object to Defendant's Motion on this ground. *See* Pl.'s Opp'n 2, n.1. Count III and Count IV of Plaintiff's Complaint are claims for employment discrimination and retaliation

pursuant to 42 U.S.C. § 1981.  However, these claims against Defendant, a state actor, are clearly barred by the Eleventh Amendment and are hereby dismissed.  *See Middlebrooks v. Univ. of Md. at College Park*, 980 F. Supp. 824, 828–29 (D. Md. 1997).  Defendant is not immune from Counts I and II, claims for employment discrimination and retaliation under Title VII.

### A.  Failure to Exhaust Administrative Remedies

Defendant moves to dismiss Counts I and II of Plaintiff's Complaint on the grounds that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 2000e-5(e)(1). In the Fourth Circuit, it is well-established that in order to bring an employment discrimination claim in Federal Court under Title VII, a plaintiff must first "exhaust his administrative remedies by filing a discrimination charge with the EEOC."  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (internal quotation marks omitted); *Sloop v. Mem'l Mission Hosp.*, 198 F.3d 147, 148 (4th Cir. 1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC."); *Taylor v. Va. Union Univ.*, 193 F.3d 219, 239 (4th Cir. 1999) ("In order to assert a Title VII claim in Federal Court, a plaintiff must have exhausted her administrative remedies with respect to the claim.").  Specifically, 42 U.S.C. § 2000e-5(e)(1) "mandates that such a charge be filed within 180 days of the alleged discriminatory act, unless the state in which the alleged act occurred is a 'deferral state,' or a state with its own law prohibiting discrimination and an agency enforcing the law."  *Kline v. Home Depot, Inc.*, Civil No.: RDB-08-990, 2009 WL 2246656, at *4 (D. Md. 2009).  Maryland is a deferral state, thus Plaintiff had 300 days from the date of Defendant's alleged unlawful employment practice in which to file his charge with the EEOC.  *See id.*  The underlying purpose of this exhaustion requirement is to put the defendant on notice and encourage resolution of the issue outside of the court system.  *Miles*, 429 F.3d at 491.  Additionally, the "300-day [filing]

deadline serves as a statute of limitations in regards to any subsequent judicial proceeding." *Kline*, 2009 WL 2246656, at *4.

Here, Defendant asserts that Plaintiff failed to exhaust his administrative remedies within the 300-day statutory period and is time-barred from pursuing a discrimination claim in this Court. Def.'s Mot. 1. It is undisputed that Plaintiff filed an official Charge of Discrimination with the EEOC on March 2, 2011. It also is undisputed that Plaintiff's initial demotion from Instructor to Lecturer occurred in 2002, well outside of the EEOC's 300-day filing deadline. In fact, the 2002, 2004, and 2009 alleged discriminatory incidents all fall outside of the 300-day filing deadline; only the August 6, 2010 failure to promote incident falls within it. Plaintiff makes the argument that Defendant's "interrelated set of failure to promote incidents" beginning in 2002 and continuing through 2010 amount to a continuing violation such that the actionable incidents that predate the 300-day charging period may be linked to the 2010 incident occurring within the period. Pl.'s Opp'n 9–10. Plaintiff's argument cannot prevail, however, in light of the abundance of case law to the contrary.

While it is true that the continuing violation doctrine may "save certain unexhausted, otherwise time-barred claims[,]" *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 473 (2002), because "events that occur outside the statutory window are not time-barred if they relate to a timely incident as a series of separate but related acts amounting to a continuing violation[,]" *Janey v. N. Hess Sons, Inc.*, 268 F. Supp. 2d 616, 623 (2003) (internal quotation marks omitted), the law is clear that the doctrine "does not apply to discrete discriminatory actions, such as promotions and transfers," *id.* at 623 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). *See, e.g.*, *Mezu v. Morgan State Univ.*, 367 Fed. App'x 385, 388 (4th Cir. 2010) ("Discrete acts such as . . . failure to promote . . . are not actionable if time barred, even

when they are related to acts alleged in timely filed charges."); *Belton v. City of Charlotte*, 175 Fed. App'x 641, 653 (4th Cir. 2006) ("The Supreme Court has specifically identified the failure to promote as a discrete act that occur[s] on the day that it happen[s].") (internal quotation marks omitted); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) ("Because failure to promote is a discrete act of discrimination . . . the continuing violation doctrine does not apply here and cannot save [Plainitff]'s untimely claims."). In *National Railroad*, the Supreme Court explicitly held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and therefore, "[e]ach incident of discrimination . . . constitutes a separate actionable employment practice." *Janey*, 268 F. Supp. 2d at 623 (quoting *Nat'l R.R.*, 536 U.S. at 114). Accordingly, Plaintiff's assertion that "[b]ecause [he] alleges recurring incidences of failures to promote . . . these incidents collectively may be characterized as an interrelated set of failure to promote incidents that amount to a continuing violation" is without merit. Undeniably, Plaintiff's 2002 demotion, 2004 denial of promotion and tenure, 2009 denial of permanent status, and 2010 denial of promotion and tenure each are discrete, actionable incidents of discrimination for which Plaintiff could have filed individual charges of discrimination with the EEOC. *See id.* Plaintiff failed to do so with respect to the 2002, 2004, and 2009 incidents, and therefore any claims that he may have based on them are time-barred. Put simply, "the continuing violation doctrine does not operate to salvage Plaintiff's possible claims arising prior to" August 6, 2010. *See id.* Only Defendant's denial of Plaintiff's 2010 application for tenure or promotion may form the basis of his Complaint.[3] *See id.* Limiting

---

[3] While Plaintiff "may not recover for discrete acts of discrimination outside the limitations period," he would not be barred "'from using the prior acts as background evidence in support of a timely claim.'" *Enoch v. Becton, Dickinson & Co.*, Civil No.: ELH-11-3551, 2012 WL 2371049, at *5 n.7 (D. Md. June 22, 2012) (quoting *Morgan*, 536 U.S. at 113).

Plaintiff's Complaint to the 2010 failure to promote incident, the Court must next determine whether Plaintiff has established a prima facie case of employment discrimination and retaliation under Title VII.[4]  I will discuss each in turn.

### B. Prima Facie Case of Employment Discrimination and Retaliation Under Title VII

Defendant argues that the 2010 failure to promote or review for tenure incident is not actionable because Plaintiff "is precluded from a promotion or status change by University policy."  Def.'s Mem. 8.  Specifically, Defendant argues that while Plaintiff's 2002 demotion could be considered a "discrete act" of discrimination, Plaintiff failed to timely pursue relief with the EEOC in 2002.  *Id.*  Thus, Defendant argues, the 2010 failure to promote or review for tenure is merely an affirmance of his status as a Lecturer, ineligible for review for tenure or permanent status.  *Id.*  The Court agrees with Defendant.

*a)   Employment Discrimination*

Absent direct evidence, to lay out a prima facie case of discrimination under Title VII based on the denial of a promotion or tenure, Plaintiff must demonstrate that he: "(1) is a member of a protected class; (2) applied for promotion and tenure; (3) was qualified for the position . . . and (4) 'was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.'" *Weathers v. Univ. of N. Carolina at Chapel Hill*, 477 Fed. App'x 508, 509 (4th Cir. 2011) (quoting *Alvarado v. Bd. of Trs.*, 928 F.2d 118, 121 (4th Cir. 1991)); *accord Evans v. Techs.*

---

[4] In its Motion, Defendant argued that the only actionable claim Plaintiff could possibly assert stemmed from Plaintiff's initial demotion in 2002.  Def.'s Mem. 9.  However, Plaintiff timely filed an official charge of discrimination with the EEOC after he was denied promotion or tenure review in 2010.  *See id.* at 4.  Thus, any claims stemming from this incident are not time-barred and the Court will review each claim under the *Twombly* and *Iqbal* pleading standards.

*Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996).  However, as Judge Messitte aptly stated in *Cole v. Hillside Family of Agencies, Inc.* Civil No.: PJM-10-3326, 2011 WL 2413928, at *4 (D. Md. June 9, 2011), "[m]erely parroting these elements . . . or attempting to satisfy them with nothing more than conclusory allegations[] is insufficient to survive a motion to dismiss."

While Plaintiff has pleaded facts sufficient to satisfy the first two elements,[5] he actually admits in his Complaint that he cannot satisfy the third element requiring him to demonstrate that he is qualified for the position he seeks.  Plaintiff states: "[I]n 2002, the University unilaterally demoted [Plaintiff]'s position to that of Lecturer, which, according to the ART Policy, is a position that is not intended to be considered for professional appointment." Compl. 4.  Thus, by Plaintiff's own admission, when he sought promotion to Assistant Professor and tenure review in 2010, he was, by University policy, not eligible for it because of his current employment status. *See id.*  Plaintiff offers further support for this proposition when he states that Defendant "instructed him to sign one-year Letters of Appointment with the Lecturer designation" after his demotion. *Id.* at 5.  Despite this, Plaintiff appears to argue that because he was eligible for tenure review in 2002, yet was demoted instead,[6] each time he sought promotion, permanent status, or tenure review thereafter, he should be eligible for it because his initial demotion was illegal.  However, while Plaintiff's initial demotion could have formed the basis of a claim for discrimination, as previously stated, Plaintiff failed to exhaust his administrative remedies and is

---

[5] In his Complaint, Plaintiff alleges that he is a foreign-born male of African descent and that he applied for promotion and tenure, and was subsequently denied both, on August 6, 2010. Compl. 2, 9.

[6] And, notably, Defendant does not contest that the initial demotion could be considered a discrete act of alleged discrimination that could form the basis of a claim. *See* Def.'s Reply 5.

therefore precluded from basing any discrimination claim on his 2002 demotion, 2004 denial of tenure and promotion, and 2009 denial of permanent status. *See, e.g.*, *Soble v. Univ. of Md.*, 572 F. Supp. 1509, 1515 (D. Md. 1983) (finding no continuing violation "where there was a demotion of a grievant and subsequent denials of promotions" and no allegations of a concerted plan). To circumvent this problem, Plaintiff asserts that "whether [Plaintiff]'s current position at the University is one that is eligible for review of tenure or promotion is highly disputed." Pl.'s Opp'n 8. Yet, while Plaintiff may wish this were true, he has pleaded no facts to establish a plausible claim in light of his own admission to the contrary.[7]

Finally, Plaintiff also has failed to plead any facts demonstrating that he was "rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination." *See Weathers*, 477 Fed. App'x at 509. While Plaintiff alleged in his Complaint that other, American-born, professors received tenure or promotion while he did not, this occurred in 2004, after Plaintiff sought an appointment as a tenure track Assistant Professor, and again in 2009 after Plaintiff sought permanent status. Compl. 6, 8. Notably, Plaintiff did not plead any similar facts in support of his discrete claim for alleged discrimination after his 2010 denial of tenure and promotion. Plaintiff's claim for employment discrimination based on the failure to promote or grant tenure review must fail

---

[7] Specifically, he argues that he must be eligible for promotion and tenure because on November 11, 2010, Defendant "requested that [Plaintiff] provide it with evidence for his application for, and entitlement to, tenure and promotion to Assistant Professor." Compl. 9; Pl.'s Opp'n 8. Plaintiff actually states that "[n]o other conclusion makes sense." Pl.'s Opp'n 9. While it is Plaintiff's conclusion that Defendant's request does not make sense, the most plausible explanation for the request is that Defendant sought additional information to determine whether Plaintiff was eligible for tenure and promotion to Assistant Professor. As Plaintiff admits, Defendant then concluded, again, that he was not. *See* Compl. 9 ("On or about December 16, 2010, [Defendant] . . . denied [Plaintiff]'s application for tenure and promotion [and] asserted that [he] was ineligible . . . because he was not on tenure-track."). The bottom line is that Plaintiff has not pleaded facts to establish a plausible claim for discrimination regarding the 2010 failure to promote him.

because Plaintiff has not pleaded facts sufficient to demonstrate the existence of a plausible claim for which he is entitled to relief.

### b) *Retaliation*

To succeed on a Title VII retaliation claim, a plaintiff must show that (1) he "'engaged in protected activity;'" that (2) the employer "'took adverse action against [him__];'" and that (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland v. Prince George's Cnty, Md.*, 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). Plaintiff has demonstrated that he engaged in a protected activity when he filed his discrimination charge with the EEOC, but he has not pleaded facts to "raise [his] right to relief above the speculative level" with regard to the second and third elements of the claim. *Tasciyan v. Medical Numerics*, 820 F. Supp. 2d 664, 669–70 (D. Md. 2011) (internal quotation marks omitted). Specifically, in support of Plaintiff's retaliation claim, he states that after he filed his EEOC complaint, "University administrators . . . engaged in retaliatory conduct" and that Defendant, through the actions of others, retaliated against Plaintiff by "threatening to terminate [Plaintiff]'s employment and/or by continuing to subject [Plaintiff] to disparate treatment in the terms and conditions of his employment with the University." These factually barren allegations are the very sort of legal conclusions or conclusory allegations that are impermissible under *Iqbal* and *Twombly*. Indeed, the Court is not required to "accept unsupported legal allegations . . . legal conclusions couched as factual allegations . . . or conclusory factual allegations devoid of any reference to actual events." *Tasciyan*, 820 F. Supp. 2d at 669–70. Yet, that is exactly what Plaintiff is asking this Court to do.

Notably, the only factual support that Plaintiff provides in support of these conclusory allegations is a conversation that Plaintiff had with Professor Duah, AFE Department Chair, more than a year after filing his EEOC claim. Plaintiff alleges that Professor Duah "expressed disappointment that Plaintiff sought relief outside the University by filing a complaint with the EEOC" and told Plaintiff that his position at the University was that of a Lecturer and therefore, "the Dean can let [him] go at any[]time." Compl. 11–12. Plaintiff alleges that as a result of "the University's actions . . . he felt humiliated, disrespected, hurt, sad, fearful for his job, and offended by his treatment." *Id.* at 12. However, this example alone does not provide sufficient factual support to state a claim for retaliation under Title VII that is "plausible on its face." *See Iqbal*, 566 U.S. at 678. Even assuming that Professor Duah's personal conversation with Plaintiff could be imputed to Defendant,[8] Plaintiff has not demonstrated that the conversation amounted to a materially adverse employment action. *See, e.g.*, *Streeter v. Md. Nat'l Capital Park and Planning Comm'n*, Civil No.: RWT-12-976, 2013 WL 105892, at *2 (D. Md. Jan. 8, 2013) (reasoning that plaintiff's allegation that she was terminated from her position as retaliation amounted to "naked assertions of wrongdoing," "generalized retaliatory conduct," and no more); *see also Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 633 (E.D. Va. 2011) (finding that plaintiff's allegation that she was transferred after complaining of sexual harassment was insufficient to state a claim for retaliation because she did not allege any other "cognizable malady").

---

[8] And, Plaintiff has not demonstrated any reason why it should be. *See Butler v. Md. Aviation Admin.*, Civil No.: MJG-11-2854, 2012 WL 3541985, at *10 n.15 (D. Md. August 14, 2012) (holding that plaintiff failed to state a plausible retaliation claim against her employer on the basis of the alleged retaliatory conduct of her supervisor because Title VII only protects individuals from retaliation by an employer, and the supervisor's conduct could not be imputed to the employer).

The law is clear that a materially adverse action is one that "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *White v. Amerital Corp.*, Civil No.: DKC-10-0929, 2011 WL 6837644, at *8 (D. Md. Dec. 28, 2011) (quoting *Burlington N. & Santa Fe Ry. Co.*, 648 U.S. 53, 68 (2006)). On the other hand, the "'anti-retaliation provision of Title VII does not protect against petty slights, minor annoyances, and simple lack of good manners.'" *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011) (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 737 (D. Md. 2009)). Indeed, Title VII "does not mandate a happy workplace." *Jensen v. Potter*, 435 F.3d 444, 451 (3rd Cir. 2006). Even when viewed in the light most favorable to Plaintiff, without more, Professor Duah's comment appears to be the mere expression of Professor Duah's personal opinion and a recitation of Plaintiff's current employment status. This is exactly the type of workplace conversation that is beyond the reach of Title VII. *Compare White*, 2011 WL 6837644, at *8 (holding that a "lone comment" that a person is "sick and tired" of the plaintiff is "little more than an innocuous remark that is inactionable under Title VII"), *Smith v. Verizon Wash., D.C.*, Civil No.: PJM-11-1301, 2011 WL 5547996, at *1–2 (D. Md. Nov. 10, 2011) (holding that plaintiff's complaint alleging his manager threatened repeatedly to fire him is "essentially devoid of material factual allegations"), *and Bishop v. Bd. of Educ. of Calvery Cnty.*, Civil No.: DKC-11-1100, 2011 WL 2651246, at *7–8 (D. Md. July 5, 2011) (stating that ignoring and walking past plaintiff is precisely the type of petty slight or minor annoyance that does not constitute retaliation and noted that plaintiff's reprimand has not "altered the terms and conditions of his employment in any way"), *with Engler v. Harris Corp.*, Civil No.: GLR-11-3597, 2012 WL 3745710, at *8–9 (D. Md. Aug. 28, 2012) (stating that being removed from an important managerial position amounts to a materially adverse action, as does being restricted from

15

attending weekly meetings critical to an employee's advancement), *Sellito v. Metropark USA, Inc.*, Civil No.: RDB-11-00814, 2012 WL 1405949, at *8 (D. Md. April 20, 2012) (finding plaintiff's allegation that he was suspended and fired a few days after filing a claim with the EEOC sufficient to state a legally cognizable claim for retaliation), *Tasciyan*, 820 F. Supp. 2d at 675 (holding that, albeit lacking, plaintiff stated a plausible claim for retaliation by alleging that that her employer "ordered her to remove her complaints" against employer from her evaluation and was then terminated), *Cole*, 2011 WL 2413928, at *4 (holding that because plaintiff's charge of discrimination showed that he filed an EEOC complaint on December 19, 2009 and was terminated on December 23, 2009, "some four days after" filing an internal grievance, plaintiff properly stated a Title VII claim for retaliation), *and Dave v. Lanier*, 606 F. Supp. 2d 45, 51-52 (D.D.C. 2009) (holding that plaintiff's allegations that defendant "created a change in his employment status by placing him in a lower-level training class, denying him training opportunities necessary for graduation and ultimately firing him" were sufficient to show a materially adverse action). Plaintiff has not alleged any materially adverse action by Defendant and therefore has failed to state a claim for retaliation that is plausible on its face.

## IV. CONCLUSION

On the record before the Court, Plaintiff filed a timely charge of discrimination with regard to the alleged discriminatory failure to promote and grant tenure review that occurred on August 6, 2010. However, in light of Plaintiff's own admission that as a Lecturer, he is ineligible for professional appointment, and his failure to plead sufficient factual details in support of his retaliation claim, Plaintiff has failed to state a plausible claim upon which relief can be granted as to Counts I and II. *See Iqbal*, 556 U.S. at 678. Additionally, Defendant is

immune from suit as to Counts III and IV. Therefore Defendant's Motion to Dismiss is GRANTED.

A separate Order shall be issued concurrently with this Memorandum Opinion.

Dated: February 27, 2013                                         _____/s/_____
                                                                 Paul W. Grimm
                                                                 United States District Judge

mol